## William Rennyson, Appellant, *v.* The People's National Bank of Norristown.

*Banks and banking—Error in crediting deposits—Bank's responsibility.*

A bank, where a depositor has several open accounts, cannot divert the funds directed to be deposited to one account to another to the injury and damage of the depositor; but if the depositor suffers no injury by such diversion there can be no recovery.

Where deposits intended for R.'s individual account are credited by the bank to an account kept by R. as chairman, but belonging individually to him and paid out to him as such chairman, he suffers no damage and can make no recovery.

Argued Dec. 8, 1896. Appeal, No. 92, Nov. T., 1896, by plaintiff, from judgment of C. P. Montgomery Co., March T., 1893, No. 79, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit to recover moneys deposited in defendant's bank. Before SWARTZ, P. J.

It appears from the evidence that this was an action to recover such part of fifteen checks given by various persons and corporations to the order of the plaintiff and by him indorsed, " For deposit only to the credit of Wm. Rennyson " and actually deposited with the defendant, The People's National Bank of Norristown from June 14, 1890, to April 18, 1891, which the defendant collected and failed to credit to the account of the appellant. The checks were for sums aggregating

$1,159.06 all of which were collected by the defendant and of which only $183.40 were credited to the account of the appellant.

Demands were made for each of the sums mentioned in the checks, and payment being refused suit was instituted for the same and interest was claimed from the date of the demand and notary's costs therefor.

It appears that the plaintiff, at the time of these transactions, was a member of the Montgomery county bar, engaged in manufacturing, owner of the Times building in Norristown, and a leading stockholder and the chairman of the Daily Times, Limited, a Norristown newspaper joint stock company.  The plaintiff was a regular depositor with the defendant, and personally made up the deposits for his account and with a rubber stamp marked the checks to his order for the same, with the inscription in blue ink, "For deposit only to the credit of Wm. Rennyson," and signed his name thereto.  He kept a "stub" account of the deposits and of the state of the bank account.  He had a separate account with the defendant kept for the Daily Times, Limited.  He made deposits to its credit with a rubber stamp with inscription in red ink, "For deposit only to the credit of the Daily Times, Limited," and signed "William Rennyson, Chairman."  The deposits by this company were made up by an employee, usually one R. S. Poinsett, its bookkeeper, who generally carried its deposits and those of the appellant to the defendant bank.

Early in May, 1891, R. S. Poinsett absconded and shortly afterwards the plaintiff discovered that the balance of the credit in his personal account with the appellee was short $975.66, and investigation showed the failure of the defendant to give credit for the proceeds of the fifteen checks to that amount, and that the deposit slips which he had made out were missing, and that the deposits had been accompanied by other slips.  The plain directions indorsed upon the checks were unaltered.

The refusal of the appellee to pay the $976.66 was based upon the allegation that a check for $50.00 dated November 24, 1890, and that day deposited with it indorsed "For deposit only to the credit of Wm. Rennyson," signed "William Rennyson," was cashed, the money being handed to whomsoever was the messenger; that of a check for $138.40 deposited February 25, 1891, indorsed, "For deposit only to the credit of Wm.

642    RENNYSON, Appellant, *v.* NATIONAL BANK.

Statement of Facts—Assignment of Errors.  [4 Pa. Superior Ct.

Rennyson," signed "William Rennyson," $50.00 was paid in cash to the messenger, and later in the day $25.00 was returned and credited to the account of the plaintiff; and that the proceeds of the remainder of the fifteen checks were deposited to the credit of the Daily Times, Limited.

There was evidence tending to show that the account of the Daily Times, Limited, was really the account of the appellant, and that William Rennyson, the plaintiff, was the owner thereof, although this was denied by the plaintiff, who produced evidence that two shares of $50.00 each were held by trustees for two minor sons of his respectively.

The testimony, however, showed that William Rennyson not only acted as chairman, but attended to the money affairs, and there was no evidence showing that a complete organization was kept up by a duly constituted treasurer and secretary.

Evidence was offered with intention to show that plaintiff had suffered loss by reason of Poinsett's declaration based upon the error in crediting the deposits.

The money erroneously deposited to the account of the Daily Times, Limited, was drawn out from time to time, and checks signed by the plaintiff as chairman.

Verdict and judgment for plaintiff for $112.02.  Plaintiff appealed.

*Errors assigned* among others were (5) In charging the jury as follows: "The important question is, when Mr. Rennyson as William Rennyson, chairman, drew out that money did he draw it out as his money?  Did it pass into his hands as his individual money, and did he so receive it?  If he did, then it the bank, is called upon to pay it a second time by your verdict; William Rennyson as an individual has twice received the proceeds of the checks that were collected by the bank.  If, on the other hand, this is a different concern, then, although that different concern may have drawn out the money, that is not chargeable against William Rennyson.  If, as an illustration, I send my checks to bank and the bank by some mistake deposits them to the credit of your foreman, and afterwards the foreman draws out the money, the bank cannot say to me 'go to the foreman and get your money from him.  It was your money. You go to the foreman and get it.'  I would answer, 'No, I

directed you to deposit that money in my account. If you deposited it in the account of anybody else you as a bank go and collect it from that person and hand it over to me. The bank could not say to me I should go and get it. I would say to the bank, 'you are the party to collect the money for me. You are the party to pay the money over upon my order, because that is the arrangement I made with you when I became a depositor at your bank.'"    (6) In charging the jury as follows: " A man may call his business any business he pleases. I may engage in business and take any name I see fit, and yet I may be the only person that is interested in it. All profits go into my pocket, I sustain all the losses, and I am the only person responsible in-that business, although the name itself may not indicate that I have anything whatever to do with it. So here, if the Daily Times, Limited, although it did not contain the name of William Rennyson, was really William Rennyson, then for all purposes in this case a payment to the Daily Times, Limited, was a payment to William Rennyson."    (7) In charging the jury as follows: "Now, it is not so much the form that may be shown as the actual substance of the thing. It may be true, and the testimony, if you believe it, seems to indicate that Mr. Rennyson gave a small interest in this partnership association to two of his sons; that originally their shares belonged to other parties, but by a sheriff's sale and by other parties going out they finally reached his two children. If this was simply a form for keeping up appearances, and this partnership association had really no substance about it, if William Rennyson really was the whole concern, and all that he did so far as observing the act of 1874 in relation to partnership associations is concerned, was a mere formal matter without any meaning to it, then although he may show to you that he did give to his boys a very small interest in this concern, yet if in fact you find that was only a formal matter, that was only for appearance, and that in fact and in truth William Rennyson was the whole thing, that he held himself out as responsible for the debts of the concern that may have been contracted, that he was the man that would pay the losses and receive the profits, that he controlled it in every respect just as he would if it was his individual business, and it had in actual practice no other form or substance than that he was the man and the only man connected

with it, then it seems to me, no matter what the form may have been, if he really was the Daily Times, Limited, and received the money from the bank by drawing it out when it had been deposited in the Daily Times, Limited, account, then he received this money that was diverted or placed in an improper account through the carelessness of one of the officers of the bank." (8) In charging the jury as follows: " What else is there? Mr. Rennyson says this was a bona fide partnership association, that he was the chairman, that the managers were selected and he was chosen to that position. When he was asked who was treasurer, after some hesitation he said he managed the moneys. I do not know that he was asked who was secretary. This act of assembly requires that there shall be managers chosen, and one of the managers shall be the chairman and one other of the managers shall be the treasurer and secretary, or the same manager may hold both positions of treasurer and secretary. I only call your attention to this because you may find under this testimony that while certain forms were observed in respect to the partnership association, that in fact and in truth William Rennyson was none other than the Daily Times, Limited. That is a matter for you, and you are to determine the facts in this case." (11) In overruling the objection by the plaintiff to the question : " Q. Who constituted it (the Daily Times, Limited) at this period?" (12) In overruling the objection by the plaintiff " to the witness testifying to any disposition of the money other than the disposition in accordance with the indorsement upon the back of the checks." (13) In overruling the objection by the plaintiff to the question to the witness Evans, as follows : " Q. If the court pleases, to cover that question, after all these moneys that were deposited in the account of the Daily Times, Limited—what became of the moneys after they were deposited there? Ans: The moneys thus deposited to the credit of the Daily Times, Limited, were drawn out at different times. They were drawn out over the signature of William Rennyson, chairman, William Rennyson signed by himself and chairman printed." (14) In allowing the defendant's offer " to prove that William Rennyson at the time named came to the bank and told the officers of the bank that he was the owner of the Daily Times, Limited, that no one else had any interest in it but himself." (15) In allowing the offer by the defendant of the agreement of

sale of the Daily Times, Limited, to Irvin P. Wanger. (16) In striking out the testimony of the plaintiff, as follows:

The Court: I will allow you to show any loss or embezzlement by an employee that you can trace to the diversion by the bank, but it must be connected with that diversion.

Witness resumed: "The Times, Limited, Company was kept distinctly separate in its business transactions from every other business that I had connection with, and it was running very close. The entire proceeds of the Daily Times, Limited, as it came in was abstracted by Poinsett, and the moneys from the bank belonging to my individual account were put into the Daily Times, Limited, account in order to make up that loss."

Mr. Larzelere: I move that be stricken out.

The Court: Yes, unless you can show some amount of money that came into the hands of your employees, or was in your safe or in your drawer, and that that money was taken, it is useless to go on any further.

The witness: "Then, I would take the sums of money that came into the Times Limited Company's drawer. They were taken almost to a cent, and the deposit was made up by diverting funds."

Objected to.

Mr. Larzelere: I ask that on my motion to strike out his previous testimony we have a ruling.

The Court: If there is no amount mentioned it cannot amount to anything to say that everything was taken. We do not know whether it was one cent, or $500, or $1,000. There is nothing to strike out, because there is no testimony here that amounts to anything. It is not responsive to the question that was put to him, and therefore if you insist on it, although I do not see how it hurt you, the answer not being responsive to the question, and not coming up to the requirement of the ruling of the court as made, it is stricken out.

Plaintiff excepts. Bill sealed.

(17) In allowing the motion of the defendant "that all the evidence relating to any embezzlement made from the Daily Times, Limited, by any of its employees be stricken out of this case."

*Irvin P. Wanger*, of *Wanger & Knipe*, for appellant.—A bank

which receives a deposit under an agreement to apply it to the payment of a debt due a designated person, cannot divest it of the purpose of the trust by paying a different one: Parker v. Hartley, 91 Pa. 465; Wilson v. Dawson, 52 Ind. 513; Judy v. Bank, 81 Mo. 404; Morse on Banks, sec. 326.

A party may also, by agreement, debar himself from pleading a set-off: Hennis v. Page, 3 Whart. 275; United States Bank v. Macalester, 9 Pa. 475; Carman v. Garrison, 13 Pa. 158.

The agreement need not be express, but may be implied: Ardesco Oil Co. v. N. A. Mining and Oil Co., 66 Pa. 375; Shearman v. Morrison, 149 Pa. 397.

The part of the charge included in the eighth assignment presents but one view of the alleged conversation between the appellant and the bank officers, and is in conflict with the decision in Penna. Canal Co. v. Harris, 101 Pa. 80, that "it is error to confine the attention of the jury to one view of the case where there is more than one which they should consider:" Citing Garret v. Gonter, 42 Pa. 143; Relf v. Rapp, 3 W. & S. 21.

The general effect of the charge was accordingly partial and tended to mislead, and hence came directly within the decision of the Supreme Court in Canal Co. v. Harris, 101 Pa. 80.

This is quoted approvingly by Justice McCollum in the case of Peirson v. Duncan, 162 Pa. 187, with reference also to the opinion of Justice Green in Penn. Iron Co. v. Diller, 17 W. N. C. 6.

*N. H. Larzelere*, with him *E. L. Hallman*, for appellee.—The question was whether the Daily Times' account belonged to the plaintiff. The facts were fairly stated in the charge, and the inference left to the jury. The plaintiff presented no requests to charge in any particular way. No rule laid down in Penna. Canal Co. v. Harris, 101 Pa. 80, was violated.

Opinion by Reeder, J., May 10, 1897:

The instruction of the learned court below to the jury upon the question of the bank's liability for money erroneously paid or mistakenly diverted from one account to another whereby the depositor suffers loss, was a full, complete and exact state-

ment of the law.  A bank where a depositor has several open accounts cannot divert the funds directed to be deposited to one account to another to the injury and damage of the depositor.  But if the depositor suffers no injury by such diversion, there can be no recovery.  The only question therefore for the jury was the one submitted by the court below, namely; did the plaintiff actually get the money diverted by the bank from the account to which it was directed by him to be accredited.  As to that portion of the amount paid in cash to the messenger for which the jury rendered a verdict there can be no question now.  That portion which was diverted from Rennyson's private account and accredited to the account of " The Daily Times, Limited " which was owned by Rennyson, that in fact Rennyson was " The Daily Times, Limited," and as therefore the money diverted from one account and that his individual account, was accredited to another account which was also his own individual account, although under another name and of which he got the benefit there was no injury to the plaintiff and therefore there can be no recovery.  The case of Bank v. Mason, 95 Pa. 117, relied upon by plaintiff is not in point.  There the bank refused to pay " A " money deposited by him claiming that the money belonged to " D."  The Supreme Court held that only " D " or an attaching creditor could set up a claim for the money against " A," that the bank having received the money from " A " could not avail itself of any such defense.  A very different defense from the one in this case.  Here the bank says in reply to Rennyson's action for the money diverted by them, " We have already paid you this money upon your own checks, signed ' Wm. Rennyson, chairman ' upon the account of ' The Daily Times, Limited ' which was Wm. Rennyson."  This question was fairly submitted to the jury, and the jury found that Wm. Rennyson was in point of fact " The Daily Times, Limited."  If, however, even that being true it could be proven that Wm. Rennyson was misled to his injury by such mistaken entry of his deposit by the bank, Rennyson would nevertheless be entitled to recover from the bank the amount which he lost by the bank's mistake, if he lost anything. It cannot be said in this case upon the facts as found by the jury that there was any loss at all unless the 16th and 17th assignments of error must be sustained, and we should regard the

evidence stricken out by the court as competent and material to the issue. The plaintiff testified that an employee had abstracted from the money received by " The Daily Times, Limited " from time to time considerable amounts without saying how much, or specifying the time more definitely than from June, 1890, to May, 1891. Unless the defendant could go further and show that the mistaken entry on the books of the bank led to his deception in regard to the embezzlement, in no aspect of the case could it be considered. Even if he had done so the facts testified to were not properly in evidence, for the reason that no sufficient proof of embezzlement was given by the defendant. A vague statement that moneys were taken was clearly insufficient even though that fact had been so connected with the mistaken entries in the books of the bank. In the absence of any sufficient proof of embezzlement, and also the failure to show how this embezzlement taken in connection with the mistaken entries of deposits led to his damage, the court committed no error in striking out the testimony of the plaintiff complained of in the 16th and 17th assignments of error. This disposes of all the assignments of error.

Judgment affirmed.